IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DERYL DION MORROW,**

    **Plaintiff,**

**v.**                                                              **CIV-09-00395 JCH/RHS**

**SANTA FE BOYS&**
**GIRLS CLUBS,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's *Opposed Motion for Leave to File First Amended Complaint for Damages* (Doc. 53). The Court, having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Plaintiff's motion is not well taken and should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a case involving alleged employment discrimination and retaliation. Plaintiff Deryl Dion Morrow is a former employee of Defendant Santa Fe Boys & Girls Club who was terminated from his position as Unit Director at Defendant's Camino de Jacobo location in March 2008. Plaintiff was initially hired by Defendant in December 2003 for the position of Education Coordinator at the same location, and was subsequently promoted and transferred to the position of Unit Director at Defendant's Valle Vista Location and then made Unit Director at Defendant's Alto Street headquarters, before his final, involuntary transfer back to Camino de Jacobo in 2006. His Complaint alleges that, beginning on August 16, 2006, he was repeatedly denied requested salary increases despite receiving favorable employment evaluations and taking

on increasing responsibilities at work.

Plaintiff claims that he approached management for Defendant at some point in 2006 with the idea that Defendant promote him to the position of Director of Operations, which would have given Plaintiff supervisory authority over all of Defendant's affiliated clubs. Defendant did not take him up on his idea, and in March 2007, Plaintiff learned that a Director of Operations position had been created and offered to another individual without being posted by Defendant. When Plaintiff raised the issue with Defendant's Chief Professional Officer, he was invited to submit an application for the position, but did not receive an interview. The individual to whom the position had been offered, James Rivera, who is Hispanic, ultimately declined it. Instead, Defendant named another Hispanic employee, Kacy Ramos, interim Unit Director at the Alto Street Club before eventually withdrawing the Director of Operations position.

In or around July 2007, Plaintiff alleges that he first informed management for the Defendant that he felt non-African American employees were receiving preferential treatment from Defendant "in how they [presumably, representatives and/or officials of the Defendant] dealt with certain employee and personnel issues." (Doc. 1, Cplt. ¶ 22). He continued to repeat his complaint throughout the remainder of his tenure as an employee of Defendant.

Also in July 2007, Plaintiff was suspended for five days by Defendant, for a reason not set forth in the Complaint. He claims that he was nevertheless asked to work each day of his suspension, because Defendant was short-staffed. Plaintiff alleges that he was not paid for this five-day period until five to six months later.

In August 2007, Plaintiff submitted a written grievance to Defendant regarding Defendant's alleged discriminatory practices, and informed Defendant of his intention to file a copy of the written grievance with the Equal Employment Opportunity Commission ("EEOC").

Several months later, in January or February 2008, Plaintiff officially filed a charge of discrimination with the EEOC.

Also during this time period, in or around January 2008, Plaintiff alleges that Defendant created the new position of Program Director – the functional equivalent of the Director of Operations position Plaintiff had originally sought – "for Mr. Rivera, the Hispanic candidate who had earlier declined the DOO position." *Id.* ¶ 24.  Plaintiff alleges that he was not given an opportunity to apply for the position.

At some point after Plaintiff filed his EEOC claim, Defendant placed him on a ten-day, unpaid suspension, beginning on February 29, 2008.  Defendant's stated reason for suspending Plaintiff is not set forth in the Complaint.

Upon Plaintiff's return from suspension, on or about March 15, 2008, Defendant terminated Plaintiff's employment, "on the basis of alleged 'job abandonment' and other pretextual, unsupported and false reasons." *Id.* ¶ 33.

On April 24, 2009, Plaintiff filed the instant lawsuit, setting forth counts for (I) race discrimination under Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act; (II) illegal retaliation under Title VII and the New Mexico Human Rights Act; and (III) negligent retention, supervision, and/or training under New Mexico common law.  (Doc. 1). On September 2, 2009, the Clerk entered a default judgment against Defendant.  (Doc. 11). Defendant moved to set aside the entry of default on September 4, 2009 (Doc. 12), and its motion was subsequently granted on January 15, 2010.  (Doc. 17).  In the interim, Defendant filed its Answer on September 18, 2009.  (Doc. 14).

On March 23, 2010, U.S. Magistrate Judge Robert Hayes Scott entered a scheduling order setting a discovery deadline of August 31, 2010.  (Doc. 30).  The scheduling order did not

set a deadline for amendment of the pleadings.

On August 18, 2010, Defendant filed the instant motion (Doc. 53) which was fully briefed on September 15, 2010.  (Doc. 67).

## LEGAL STANDARD

Fed. R. Civ. P. 15 (a)(2) provides that, after the time for amending the pleadings as a matter of course has passed, a party may amend its pleadings "only with the opposing party's written consent or the court's leave."  However, leave to amend should be given freely "when justice so requires," Fed. R. Civ. P. 15 (a)(2), "and thus district courts may withhold leave to amend only for reasons such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *Cohen v. Longshore*, 621 F.3d 1311, 1313 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The decision whether to allow a proposed amendment after the permissive period is within the discretion of the district court.  *Panis v. Mission Hills Bank*, N.A., 60 F.3D 1486, 1494 (10th Cir. 1995).

## DISCUSSION

Plaintiff's proposed amendment seeks to add a new common-law count for retaliatory discharge, claiming that "Defendant terminated Plaintiff's employment for communicating his concerns regarding numerous issues involving Defendant's clubs, including disparate treatment of employees and of Plaintiff, in contacting the Regional Boys and Girls Clubs representative, Mr. McClendon, and in informing Defendant of his contacts with the EEOC, Plaintiff sought to

further the public interest and public good." (Doc. 53 Ex. 1, Am. Cplt. ¶ 60). While Plaintiff's language is less than perfectly clear, it appears that the proposed claim is premised on Plaintiff's having "committed [three protected] acts that public policy would authorize and encourage," (*id.* ¶ 61), that provided the motive for his discharge by the Defendant: "[1] Plaintiff's act[] of stating to Defendant that he was going to file a charge of discrimination with the EEOC against Defendant, [2] Plaintiff's statement that he was going to provide a copy of his written grievance to the EEOC, and [3] his written complaint to the Regional Boys and Girls Club representative in Denver, Colorado, Mr. McClendon." (*id.* ¶ 31; *see also id.* ¶¶ 37-38, ¶ 60). Of the three purportedly protected activities cited by Plaintiff, only the third – Plaintiff's written complaint to Mr. McClendon, the Regional Boys and Girls Club Representative in Denver, Colorado – is set forth for the first time in the Proposed Amended Complaint. Plaintiff's letter to Mr. McClendon does not appear in the record before the Court and Plaintiff makes no attempt to describe its contents or explain how they are protected for policy reasons.

Defendant opposes the amendment on the grounds that the motion is untimely; that Defendant would be prejudiced by both the need to reopen discovery to investigate Plaintiff's new factual allegations and by vague language in the proposed amendment suggesting that Plaintiff seeks to impermissibly broaden the case by alleging that he was discharged for other reasons in addition to his complaints of racial discrimination; and that the claim is futile, because Plaintiff does not identify a specific expression of public policy in New Mexico state law that was contravened by his discharge.

## *Undue Delay*

Plaintiff asserts that he could not assert a retaliatory discharge claim in good faith prior to August 3, 2010, the date on which two of Defendant's officers confirmed at their depositions

that they had been aware of two of Plaintiff's purportedly protected activities: (1) his submission to the EEOC of a copy of his grievance to Defendant, and (2) his letter of grievance to the regional representative, McClendon.  Plaintiff's reasons for the delay are not persuasive.  First, the Court notes that Plaintiff was willing to rely on the fact that he "told Defendant's management . . . that [he] was going to provide the EEOC with a copy" of the grievance he filed with the Defendant in his original Complaint.  *See* Doc.1, Cplt. ¶ 28. Moreover, the proposed amendment refers to Plaintiff's act of telling management for the Defendant that he "was going to" submit a copy of his grievance to the EEOC as the "protected activity."  (Doc. 53 Ex. 1, Am. Cplt. ¶ 37).  If Plaintiff means for this declaration of intent to constitute a protected activity, as he clearly states, it would not be necessary for representatives of the Defendant to confirm they were aware that he ultimately made good on his promise.

Nevertheless, the Court is not prepared to find that the motion was made after undue delay.  At the time the motion was brought, discovery was not yet complete.  Moreover, the Court did not enter a deadline for amending the pleadings.  Defendant's complaint that "this case has been pending since April 24, 2009, and this is the first time Plaintiff has indicated any intention of adding new theories to his case," (Doc. 59 at 1), appears rather disingenuous in light of the fact that Defendant's own failure to respond to the Complaint when it was filed contributed significantly to the delay, leading the Court to enter a default judgment against Defendant in September 2009 that was not set aside until January 2010.  Thus, under the unique circumstances of this case, the Court finds that Plaintiff's motion is not precluded by any undue delay.

*Prejudice*

The Court disagrees with Defendant's contention that allowing the amendment would

6

require Defendant to depose new witnesses and re-open Plaintiff's deposition.  The only new factual allegation in the Amended Complaint – which proffers Plaintiff's letter to the Denver-based Regional Boys and Girls Club representative, Mr. McClendon, as an additional basis for the alleged retaliatory discharge – would not require Defendant to depose Mr. McClendon, as Plaintiff's claim is that he was terminated "for communicating his concerns" with respect to the Defendant, not on the basis of how his communications were received by Mr. McClendon. (Doc. 53 Ex. 1, Am. Cplt. ¶ 62).

Defendant's argument that the proposed amendment likewise prejudices Defendant by opening up the case to a host of new legal arguments, however, has considerable merit.  Courts generally only find prejudice when an amendment unfairly affects a defendant's ability to prepare a defense to the amendment, which most often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006).  Here, Defendant points to language in the proposed amendment stating that "[i]n filing a grievance with Defendant <u>regarding numerous issues</u> involving Defendant's clubs, <u>including</u> disparate treatment of employees and of Plaintiff[;] <u>in contacting the Regional Boys and Girls Clubs representative, Mr. McClendon</u>[;] and in informing Defendant of his contacts with the EEOC, Plaintiff sought to further the public interest and public good."  (Doc. 53 Ex. 1, Am. Cplt. ¶ 60) (emphasis added).

The Court agrees that there are two obvious problems with the Amendment that might potentially prejudice Defendant.  First, because the amendment states that Plaintiff was discharged partly in retaliation for his August 2007 grievance to Defendant complaining of "numerous issues" at its facilities, "including" but apparently not limited to its disparate

7

treatment of him in comparison to other employees (presumably on account of his race, though that too is not elucidated in the proposed claim), if Plaintiff should choose to raise one of these unidentified numerous other issues at a later time, then the case might well be materially changed and Defendant hindered in its ability to prepare its defense for trial.  Because Plaintiff has not included the August 2007 grievance in the record, the Court has no way of determining whether Defendant's expressed concerns on that score are well-founded, or whether Plaintiff's vague language and reference to "numerous issues" is merely an attempt at describing his complaints of racial discrimination in an expansive way.  Likewise, Plaintiff fails to either include his August 2007 grievance letter to Mr. McClendon or describe the nature of its contents anywhere in the proposed amendment, even to confirm that it involved allegations of race-based discrimination.  The vague nature of his pleadings invites the possibility that Defendant could be surprised, and thus prejudiced, by a myriad of new arguments relating to the basis for the alleged retaliatory discharge.

By way of response, Plaintiff notes that he already produced a copy of his letter to Mr. McClendon to Defendant, which, he implies, should put Defendant's (if not the Court's) concerns to rest as to any potential surprises contained therein. Further, Plaintiff maintain that "[f]or all practical purposes, there is little distinction between" his previously-pled statutory claim for retaliation and its new common law claim for retaliatory discharge.  (Doc. 67 at 2).  He notes that he "has already asserted a claim of retaliation under Title VII . . . essentially asserting that his termination was in retaliation for his engaging in protected activities which included going to the EEOC.  How is that materially different from a retaliatory discharge claim?" (Doc. 67 at 2-3).

The Court is in no position to answer Plaintiff's question because Plaintiff has failed to

8

state a claim for retaliatory discharge with the same degree of particularity as his charge for illegal retaliation.  The one common factual basis between the illegal retaliation count and the proposed count for retaliatory discharge, Plaintiff's EEOC Charge of Discrimination, to which Plaintiff alludes, is not the problem with the new claim – that grievance, which was both placed in the record by Defendant and described in the Complaint, is plainly limited in scope to the allegations that Plaintiff was discriminated against on account of his race and retaliated against for complaining that Defendant favored Hispanics.  *See* Doc. 59 Ex. 4.  But where his count for illegal retaliation sets forth how the alleged retaliation occurred "[a]fter Plaintiff informed Defendant that management was continuing to show . . . preferential treatment towards certain staff who were non African-American" and consequently filed a charge of discrimination with the EEOC (Doc.1, Cplt. ¶ 49), Plaintiff's proposed retaliatory discharge claim does not disclose the contents of two of the three written grievances that prompted the retaliatory discharge (except to indicate that one of them, his written grievance to Defendant, involved "numerous issues. . . including disparate treatment" on some undisclosed basis).  Moreover, while it appears that the proposed retaliatory discharge claim is based on *some* of the same facts as Plaintiff's statutory count for illegal retaliation (i.e., his EEOC grievance), it contains no similar statement identifying or limiting the underlying reason(s) for the retaliatory discharge and no explanation of how "Plaintiff sought to further the public interest and public good," (Doc. 53 Ex. 1, Am. Cplt. ¶ 60), by filing the other two grievances.

*Futility*

While the Court cannot determine on the existing record whether the undisclosed grievances set forth the kind of case-altering new legal arguments that would prejudice Defendant, the Court may assess whether the amendment is futile.  "A proposed amendment is

futile if the complaint, as amended, would be subject to dismissal," *Bradley v. Val-Meijas*, 379 F.3d 892, 901 (10th Cir. 2004), or if it fails to state a claim upon which relief may be granted. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). Under New Mexico's public policy exception to the common-law employment-at-will doctrine, an at-will employee can recover in tort on his retaliatory discharge claim only when his termination violates a clear mandate of public policy. *See Chavez v. Manville Prods. Corp.*, 777 P.2d 371, 375 (N.M. 1989). Because "not every expression of public policy will suffice to state a claim for retaliatory discharge[,] unless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause." *Shovelin v. Cent. N.M. Elec. Coop.*, 850 P.2d. 996, 1006 (N.M. 1996)); *see also Vigil v. Arzola*, 699 P.2d 613, 619 (NM Ct. App. 1983) ("A general allegation that the discharge contravened public policy is insufficient; to state a cause of action for retaliatory or abusive discharge the employee must identify a specific expression of public policy."). "A clear mandate of public policy sufficient to support a claim of retaliatory discharge may be gleaned from the enactments of the legislature and the decisions of the courts." *Gonzales v. City of Albuquerque*, No. CIV 09-0520 JB/RLP (D.N.M., Feb. 23, 2011) (quoting *Shovelin,* 850 P.2d at 1006 (marks omitted).

Here, Plaintiff pointedly fails to identify a specific expression of public policy that was contravened by his firing as mandated by the governing law. Rather, he merely asserts the general allegation that in filing the two undisclosed grievances (to Defendant and Mr. McClendon) and informing Defendant of his EEOC complaint he "sought to further the public interest and public good" and "committed acts that public policy would authorize and encourage." (Doc. 53 Ex. 1, Am. Cplt. ¶¶ 60, 61). Thus, because Plaintiff has failed to state a claim for retaliatory discharge upon which relief may be granted, the Court finds that his

proposed amendment is futile and should not be allowed.

## CONCLUSION

For the foregoing reasons, it is therefore ordered that Plaintiff's *Opposed Motion for Leave to File First Amended Complaint for Damages* (Doc. 53) is DENIED.

                                                                                    _____
                                                                                    UNITED STATES DISTRICT JUDGE